## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| ELLIOT WINTER, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-01046 JAR |
| | ) |
| FACEBOOK, INC., TIKTOK INC., | ) |
| TIKTOK PTE LTD, BYTEDANCE LTD., | ) |
| BYTEDANCE INC., and MONICA DOLAN, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

On July 9, 2021, Plaintiffs Elliot Winter and Alexandria Hurlburt filed this action against Defendants Facebook, Inc. ("Facebook"); TikTok Inc., TikTok PTE Ltd., Bytedance Ltd., and Bytedance Inc. ("TikTok")[1]; and Monica Dolan ("Dolan"), in the Circuit Court of St. Louis City, Missouri. See Elliot Winter, et al. v. Facebook, Inc., et al., Case No. 2122-CC08817 (22nd Jud. Cir.). Plaintiffs allege that Dolan and others associated with her "engaged in a pattern of behavior that resulted in the harassment of the Plaintiffs on her social media accounts" and that "[a]s a direct and proximate cause of Facebook and TikTok's failure to take down [] false abusive posts and/or posts containing [P]laintiffs [sic] personal identifying information for the purposes of stalking and harassment, [P]laintiffs sustained damages in an amount in excess of $500,000.00." (Compl. at ¶¶ 9, 97). Plaintiffs assert claims against Dolan for defamation – slander (Count I); defamation – libel (Count II); tortious interference with business contract and expectancy (Count III); invasion of

---

[1] Plaintiffs' complaint only names TikTok Inc. as a defendant (see Complaint ("Compl."), Doc. No. 3 at ¶ 3) and makes no allegations against TikTok Pte Ltd., ByteDance Ltd., and ByteDance Inc., none of whom have been served.

1

privacy (Count IV); false light (Count V); intentional infliction of emotional distress (Count VI); stalking (Count VII); harassment (Count VIII); and unlawful posting of certain information over the internet (Count IX); and a single claim of "gross negligence" against Facebook and TikTok (Count X).

Facebook, with TikTok's consent, removed the case to this Court on August 20, 2021 based on diversity jurisdiction. (Doc. No. 1). Both Facebook and TikTok have moved to dismiss the case. (Doc. Nos. 10, 12). The motions are fully briefed and ready for disposition. Because the arguments raised in support of and in opposition to dismissal are largely the same, the Court has addressed the motions together.

**Legal standard**

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A plaintiff need not provide specific facts in support of his allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and

2

a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562 (internal citation omitted). This standard "simply calls for enough facts to raise reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556. The plausibility of the plaintiff's claim is reviewed "as a whole, not plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal quotation marks and citation omitted).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56. The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678-79. Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. at 679.

If a motion to dismiss is granted, a court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. Cornelia I. Crowell GST Tr. v. Possis Med., Inc., 519 F.3d 778, 783-84 (8th Cir. 2008) (citing Wisdom v. First Midwest Bank, 167 F.3d 402, 409 (8th Cir. 1999)).

**Discussion**

Facebook and TikTok argue that Plaintiffs' negligence claim against them should be dismissed for two reasons. First, the claim is barred by § 230 of the Communications Decency Act

3

("CDA"), which immunizes internet service providers ("ISPs") against liability arising from content created by third parties. 47 U.S.C. § 230(c)(1); Johnson v. Arden, 614 F.3d 785, 791 (8th Cir. 2010). Second, Plaintiffs have failed to plead a claim for negligence, and specifically, facts establishing the existence of a duty that Facebook and TikTok owed them.

### (1) Communications Decency Act

In enacting the CDA, Congress made it the "policy of the United States" to "promote the continued development of the Internet," and "preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation[.]" Klayman v. Zuckerberg, 753 F.3d 1354, 1355-56 (D.C. Cir. 2014) (quoting 47 U.S.C. § 230(b)(1), (2)). To that end, "Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing obscene or defamatory material written or prepared by others." M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC, 809 F. Supp. 2d 1041, 1047-48 (Mo. E.D. 2011) (citation and internal quotation marks omitted).

The CDA provides, in relevant part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider," § 230(c)(1), and expressly preempts any state law to the contrary, § 230(e)(3). Johnson v. Arden, 614 F.3d 785, 790-91 (8th Cir. 2010). The Act defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3). "Read together, these provisions bar plaintiffs from holding ISPs legally responsible for information that third parties created and developed." Johnson, 614 F.3d at

4

791 (citation omitted); see also East Coast Test Prep LLC v. Allnurses.com, Inc., 971 F.3d 747, 752 (8th Cir. 2020). "Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them." Johnson, 614 F.3d at 791 (quoting Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 254 (4th Cir. 2009)).

An ancillary goal of the CDA was to "encourage service providers to self-regulate the dissemination of offensive material over their services," by granting them immunity from material published by third parties regardless of whether the interactive computer service provider took an active role in regulating the content therein. Zeran, 129 F.3d at 331. Accordingly, "§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions." Id.

The majority of federal circuits, including the Eighth Circuit, have interpreted the CDA "to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" Id. at 791 (quoting Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321 (11th Cir. 2006)). See, e.g., Klayman, 753 F.3d at 1359 (affirming dismissal of a claim against Facebook alleging its delay in removing an offensive page created by another information content provider constituted intentional assault and negligence); Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007) (affirming dismissal of a claim brought by a publicly-traded company against an internet message board operator for allegedly false and defamatory postings by pseudonymous posters); Batzel v. Smith, 333 F.3d 1018 1032-33 (9th Cir. 2003) (holding that even if operator of internet services could have reasonably concluded that the information was sent for internet publication, he was

immunized from liability for the defamatory speech as a "provider or user of interactive computer services" under the CDA); Green v. Am. Online, 318 F.3d 465, 471 (3d Cir. 2003) (holding that under the CDA the defendant ISP is not liable for failing to monitor, screen, or delete allegedly defamatory content from its site); Ben Ezra, Weinstein & Co. v. Am. Online, Inc., 206 F.3d 980, 986 (10th Cir. 2000) (finding that defendant ISP was immune to the defamation claim under the CDA when it made its own editorial decisions with respect to third-party information published on its website); (Zeran v. Am. Online, Inc., 129 F.3d 327, 332-34 (4th Cir. 1997) (holding that the CDA barred claims against defendant ISP that allegedly delayed in removing defamatory messages posted by unidentified third party, refused to post retractions of those messages, and failed to screen for similar postings thereafter).

District courts in this circuit have reached the same conclusion. See Village Voice Media, 809 F. Supp. 2d at 1047-48; Gregerson v. Vilana Fin., Inc., No. CIV.06-1164 ADM/AJB, 2008 WL 451060, at *1 (D. Minn. Feb. 15, 2008) (operator of a website where users can post comments is a provider of an interactive computer service and, as such, was not liable for the third-party comments posted on his website); Patentwizard, Inc. v. Kinko's, Inc., 163 F. Supp. 2d 1069, 1071 (D.S.D. 2001) (holding that "§ 230 of the Communication[s] Decency Act errs on the side of robust communication and prevents the plaintiffs from moving forward with their claims" that a company that allowed users to access the internet via its computers could be held liable for the actions of one of those users).

To determine whether § 230 immunity applies, a court must determine whether: (1) the defendant is a "provider … of an interactive computer service"; (2) the information for which the plaintiff seeks to hold defendant liable is "information provided by another information content

6

provider"; and (3) whether the plaintiff's claims seek to treat the defendant as a "publisher or speaker" of that information. § 230(c)(1); Klayman, 753 F.3d at 1357. On the face of Plaintiffs' complaint, all three elements are satisfied.

### Interactive computer service

The CDA broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet[.]" § 230(f)(2). Plaintiffs do not dispute that Facebook and TikTok are "interactive computer service[s]." Indeed, courts have found that Facebook qualifies as such. See Caraccioli v. Facebook, Inc., 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016); Klayman, 753 F.3d at 1357-58; Sikhs for Justice "SFJ", Inc. v. Facebook, Inc., 144 F. Supp. 3d 1088, 1092-94 (N.D. Cal. 2015); Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011). Likewise, courts have described video-sharing websites and social media applications with features similar to TikTok such as YouTube and Vimeo, as "interactive computer services." See Lewis v. Google LLC, 461 F. Supp. 3d 938, 954 (N.D Cal. 2020); Domen v. Vimeo, Inc., 433 F. Supp. 3d 592, 602 (S.D. N.Y. 2020), aff'd, 991 F.3d 66 (2d Cir. 2021).

### Information provided by another content provider

An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." § 230(f)(3). The term "another information content provider" refers to any content not provided by the interactive computer service provider itself. Wilson v. Twitter, No. 3:20-CV-00054, 2020 WL 3410349, at *11 (S.D. W.Va. May 1, 2020)

7

(citing Batzel, 333 F.3d at 1031). This means that Facebook and TikTok would not be immune from suit for content they themselves created and published directly but are immune from lawsuits stemming from content provided by other individuals they host on their platforms. Id.

Here, Plaintiffs acknowledge that the objected-to information was provided by third party users, "Monica Dolan and Group," not Facebook or TikTok. The complaint only alleges that Facebook and TikTok "refused to remove" the content/accounts posted/held by Dolan and her influencers (Compl. at ¶¶ 24, 25); nowhere is it alleged or suggested that Facebook or TikTok provided, created, or developed any of the content Plaintiffs allege harmed them. Instead, liability is based on "information provided by another information content provider," within the meaning of § 230(c)(1). "A website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online." Klayman, 753 F.3d at 1358.

**Treating Facebook and TikTok as publishers or speakers**

Lastly, Plaintiffs are clearly seeking to treat Facebook and TikTok as publishers. (See Doc. No. 16 at 5-6; Doc. No. 24 at 5). Under § 230, a cause of action "treat[s]" an entity as a "publisher" if it would hold an entity responsible for "deciding whether to publish, withdraw, postpone or alter content." Johnson, 614 F.3d at 792. Here, Plaintiffs seek to hold Facebook and TikTok liable for not removing the content/accounts posted/held by Dolan and her group, which they find objectionable. The decision whether to publish, withdraw, postpone, or alter content are traditional editorial functions of a publisher. Zeran, 129 F.3d at 330; Klayman, 753 F.3d at 1359 ("Indeed, the very essence of publishing is making the decision whether to print or retract a given piece of content – the very actions for which Klayman seeks to hold Facebook liable.").

Plaintiffs also seek to hold TikTok liable for removing their social media accounts from its platform, yet courts have found that § 230(c)(1) immunity also applies to the situation where a plaintiff objects to the removal of his or her own content. See Wilson, 2020 WL 3410349, at *12 (citing cases).

In opposition to Facebook and TikTok's motions, Plaintiffs argue that by failing to follow their own Community Standards and taking down content that violates those standards, both Facebook and TikTok have acted in "bad faith" and thus cannot be protected under § 230(c)(2), the "Good Samaritan" provision of the CDA. (Doc. No. 16 at 6-7; Doc. No. 24 at 6-7). Plaintiffs' argument is unavailing in that it ignores the fact that Facebook and TikTok are claiming immunity under § 230(c)(1), which contains no "good faith" requirement. E. Coast Test Prep LLC v. Allnurses.com, Inc., 307 F. Supp. 3d 952, 964 (D. Minn. 2018), aff'd, 971 F.3d 747 (8th Cir. 2020).

Moreover, Plaintiffs' argument rests on a misconception about the purpose of the Good Samaritan provision. It was inserted not to diminish the broad general immunity provided by § 230(c)(1), but to assure it is *not* diminished by the exercise of traditional publisher functions. See Zeran, 129 F.3d at 331 (Section 230 was designed "to encourage service providers to self-regulate the dissemination of offensive material over their services" without fear they would incur liability as a result.). In this respect, the CDA was a response to cases such as Stratton Oakmont, Inc. v. Prodigy Servs. Co., No. 31063/94, 1995 WL 323710, at *2 (N.Y. Sup. Ct. May 24, 1995), in which an ISP was found liable for defamatory statements posted by third parties because it had voluntarily screened and edited some offensive content, and so was considered a "publisher." Id. at *4. "Section 230(c)(1) was meant to undo the perverse incentives created by this reasoning, which effectively penalized providers for monitoring content." Zeran, 129 F.3d at 331. As TikTok aptly

9

notes, Plaintiffs' complaint about selective enforcement of content standards is precisely the type of claim Congress intended to preempt in § 230(c)(1).

Plaintiffs also challenge the constitutionality of § 230, arguing that by enacting § 230, Congress has induced online platforms to restrict offensive speech, some of which would otherwise be protected under the First Amendment. (Doc. No. 16 at 7-8; Doc. No. 24 at 7-8). Plaintiffs cite no authority in support of their contention and numerous courts have rejected similar arguments. See Lewis v. Google LLC, 461 F. Supp. 3d 938, 952–53 (N.D. Cal. 2020), aff'd, 851 F. App'x 723 (9th Cir. 2021) (rejecting First Amendment challenge to Section 230 as "[t]his provision does not ban or restrict any speech."); Green v. America Online, 318 F.3d 465, 472 (3d Cir. 2003) ("Section 230(c)(2) does not require AOL to restrict speech; rather it allows AOL to establish standards of decency without risking liability for doing so."); Batzel, 333 F.3d at 1028 ("[E]ven though the CDA overall may have had the purpose of restricting content, there is little doubt that the Cox–Wyden amendment, which added what ultimately became § 230 to the Act, sought to further First Amendment and e-commerce interests on the Internet[.]").

Therefore, the Court finds that Plaintiffs' claim that Facebook and TikTok wrongfully refused to remove content/accounts posted/held by Dolan and her group is barred under § 230 of the CDA. "State-law plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online." Nemet, 591 F.3d at 254 (citing Doe v. MySpace, Inc., 528 F.3d 413, 419 (5th Cir.2008); Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc., 519 F.3d 666, 672 (7th Cir. 2008); Zeran, 129 F.3d at 330-31.

**(2) Negligence**

Facebook and TikTok argue that Plaintiffs' negligence claim must also be dismissed because they allege no facts giving rise to a duty of care. To state a claim for negligence under Missouri law, the plaintiff must allege that the defendant had a duty of care to protect the plaintiff from injury; the defendant failed in performing the duty; and the defendant's failure proximately caused harm to the plaintiff. A.O.A. v. Rennert, 350 F. Supp. 3d 818, 840 (E.D. Mo. 2018) (citing Lopez v. Three Rivers Elec. Co-op., Inc., 26 S.W.3d 151, 155 (Mo. banc 2000)); Wise v. HSBC Mortg. Corp., No. 4:15-CV-911, 2015 WL 6796955, at *4 (E.D. Mo. Nov. 6, 2015). Missouri does not recognize degrees of negligence and therefore does not distinguish between negligence and gross negligence. Netherlands Ins. Co. v. Cellar Advisors, LLC, No. 4:17-CV-2585 PLC, 2019 WL 296536, at *5 (E.D. Mo. Jan. 23, 2019) (citing Fowler v. Park Corp., 673 S.W.2d 749, 755 (Mo. banc. 1984)); Rosemann v. Sigillito, 956 F. Supp. 2d 1082, 1109 (E.D. Mo. 2013).

Whether a duty exists is a question of law to be decided by the Court. Vasquez v. Hill, No. 4:11CV01561AGF, 2012 WL 6568474, at *2 (E.D. Mo. Dec. 17, 2012) (citing Hackmann v. Missouri American Water Co., 308 S.W.3d 237, 239 (Mo. Ct. App. 2009)). A legal duty owed by one to another may arise from at least three sources: (1) it may be prescribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral. Id.

Here, Plaintiffs contend that Facebook and TikTok created a duty by promulgating Community Standards for their published content, thereby implicitly acknowledging the

11

foreseeability of harm resulting from the content its users publish. Plaintiffs argue that Facebook and TikTok breached that duty by failing to remove content that violated their Community Standards after being made aware of Dolan's violations. Notably, the complaint does not describe the allegedly defamatory content, Facebook or TikTok's Community Standards, or how that content violated those standards.

To the extent Plaintiffs contend that the promulgation of Community Standards gives rise to a state-law duty of care in publishing, that argument has been rejected. "[S]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit." Klayman, 753 F.3d at 1359-60. The CDA "allows [computer service providers] to establish standards of decency without risking liability for doing so." Bennett v. Google, LLC, 882 F.3d 1163, 1168 (D.C. Cir. 2018) (quoting Green, 318 F.3d at 723). Again, "[n]one of this means … that the original culpable party who posts defamatory messages [will] escape accountability." Zeran, 129 F.3d at 330. It means only that, if Plaintiffs take issue with the posts and accounts of Dolan and her group, their legal remedy is against Dolan as the content provider, and not against Facebook and TikTok as the publisher.

**Leave to amend**

Although amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, there is no absolute right to amend. Fed. R. Civ. P. 15(a)(2); Ferguson v. Cape Girardeau Cty., 88 F.3d 647, 651 (8th Cir. 1996) (citations omitted). Leave need not be granted where amendment would be futile. Id. That is the situation here. Because Plaintiffs' claim against Facebook and TikTok is barred as a matter of law by § 230(c) of the CDA, the Court finds that allowing for its amendment would be futile. See Caraccioli, 167 F. Supp. 3d at 1067; Sikhs

12

for Justice, 144 F. Supp. 3d at 1095-96. Accordingly, Count X will be dismissed without leave to amend.

For these reasons,

**IT IS HEREBY ORDERED** that TikTok Inc.'s Motion to Dismiss [10] is **GRANTED.**

**IT IS FURTHER ORDERED** that Facebook Inc.'s Motion to Dismiss [12] is **GRANTED.**

Dated this 22nd day of November, 2021.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**